# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

| | | |
|---|---|---|
| GARY ARMITAGE, | § | |
| Plaintiff, | § | |
| v. | § | Civil Action No. 4:20-cv-00209-O |
| BNSF RAILWAY CO., | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant's Motion for Summary Judgment (ECF Nos. 30–32), filed on May 17, 2021; Plaintiff's Response (ECF No. 33–34), filed June 7, 2021; and Defendant's Reply (ECF No. 35), filed June 21, 2021. Having considered the motion, briefing, and applicable law, the Court **GRANTS** the motion.

## I. BACKGROUND

This disability-discrimination lawsuit arises from Defendant BNSF Railway Company ("BNSF") disqualifying and removing Plaintiff Gary Armitage ("Plaintiff") from his job as a train dispatcher for failing to comply with BNSF's Restricted Medication List.

Beginning in 1996, Plaintiff worked for BNSF as a train dispatcher, a fast-paced, detail-oriented job responsible for safely managing the movement of trains, communicating with train conductors, and reacting in emergency situations "to protect the public, railroad employees and railroad property." Def.'s App 4–14, 158–59, 320, 324–25, 420–21, 584, 603, ECF No. 32. Following a 2003 motorcycle accident in which Plaintiff was injured, Plaintiff's physicians managed Plaintiff's chronic pain with prescription Fentanyl patches and Hydrocodone—a treatment he still requires today. Fifteen years after the accident, BNSF's Medical Department

instituted a new policy for the health and safety of the public and its employees: BNSF employees who regularly use a medicine from the Restricted Medication List (including Fentanyl, Hydrocodone, and Oxycodone) could not work in BNSF's safety-sensitive positions—including as train dispatchers ("the Policy"). Pl.'s App., Ex. 1, ECF No. 34-2; Def.'s App. 315–17, 327–30, 333–42, 380–83, 393–96, 419–23, 425–26, 454, 468–75, 579–80, 582–83, 585–93, ECF No. 32. When the Policy became effective on January 15, 2018, Plaintiff would become medically disqualified to continue working as a train dispatcher, and BNSF urged those affected, like Plaintiff, to either transition away from those medications where feasible or seek medical leave to work with BNSF to be placed in another role. Def.'s App. 22–25, 31–32, 43, 53–57, 62–67, 160–61, 168, 391–96, 443–44, 454, ECF No. 32. During his leave, Plaintiff provided BNSF with his medical documentation and a letter from his treating pain physician explaining his long-term opioid therapy, the need to continue that therapy, and his ability to continue "functioning at optimal level[s.]" Pl.'s App., Ex. 2, ECF No. 34-2; Def.'s App 43–44, 67–78, 169–70 404–05, 429–31, 461, ECF No. 32.

A doctor from BNSF's medical department followed up with Plaintiff by phone and by letter, explaining the need for the Policy and the decision not to grant any exemptions to it. Pl.'s App., Ex. 3, ECF No. 34-3; Def.'s App. 43, 51, 59–64, 82–83, 171 313–14, 376–77, 388–89, 396–99, 402–03, 433–35, 454–60, 465, 484–85, 495–97, 583–84, 602, ECF No. 32. With BNSF's doctor's recommendation to the BNSF's Vocational Rehabilitation program, Plaintiff began working through the program to obtain a non-safety-sensitive position. Def.'s App. 83–96, 495–99, 500–26, 532–40, 542–45, 552–53, 558–60, 565–68, 572, 574–75, 594–95, 598–600, ECF No. 32. Ultimately, Plaintiff was placed temporarily and then selected permanently for a non-safety-

sensitive manager job overseeing day-to-day tactical execution of train dispatcher manpower functions. Def.'s App. 94–95, 97–99, 553–57, 561–62, 569–71, ECF No. 32.

After exhausting his remedies before the EEOC, Plaintiff sued BNSF on March 5, 2020. *See* Compl., ECF No. 1. Following a motion to dismiss parts of the original complaint, *see* ECF No. 5, Plaintiff filed an Amended Complaint, the live pleading. Am. Compl. ¶¶ 18–26, ECF No. 12. During discovery, Plaintiff withdrew one of his claims and, in response to the present motion, abandoned several others. *See* Resp. 1, ECF No. 33. The only remaining claim against BNSF is Plaintiff's ADA disability-discrimination claim based on his disqualification from his train dispatcher position. Am. Compl. ¶¶ 18–26, ECF No. 12; *see also* Resp. 1, ECF No. 33. Defendant moved for summary judgment on all remaining claims. Mot. 1, ECF No. 31. The motion is now ripe for the Court's consideration. *See* Resp., ECF Nos. 33–34; Reply, ECF No. 35.

## II. LEGAL STANDARD

The Court may grant summary judgment where the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation marks omitted).

"[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute as to any material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The movant must inform the court of the basis of its motion and demonstrate from the record that no genuine dispute as to any material fact exists. *See Celotex*, 477 U.S. at 323. "The party opposing summary

judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). The court cannot make a credibility determination in light of conflicting evidence or competing inferences. *Anderson*, 477 U.S. at 255. If there appears to be some support for disputed allegations, such that "reasonable minds could differ as to the import of the evidence," the court must deny the motion. *Id.* at 250.

## III. ANALYSIS

Defendant contends that summary judgment is proper because there is no genuine dispute of material fact as to Plaintiff's remaining ADA disability-discrimination claim. Mot. 1, ECF No. 31. In response, "Plaintiff submits that factual disputes remain concerning whether BNSF conducted an individualized direct threat analysis." Resp. 1, ECF No. 33. For the following reasons, the Court concludes that Defendant is entitled to summary judgment.

"The ADA prohibits employers from discriminating against an employee on the basis of a disability as defined by the Act." *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citing 42 U.S.C. § 12112 (2009)). "In a discriminatory-termination action under the ADA, the employee may either present direct evidence that she was discriminated against because of her disability or alternatively proceed under the burden-shifting analysis first articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). Plaintiff contends "there is no dispute [BNSF] medically disqualified Armitage because

of his chronic pain condition and use of narcotic pain medication." Resp. 2, ECF No. 34 (citing Pl.'s App., Ex. 3, ECF No. 34-3); *see also id.* at 3 ("Plaintiff submits that BNSF's conduct is direct discrimination such that the case turns on a direct threat analysis.").

"[D]irect evidence is rare." *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994). The Fifth Circuit defines "direct evidence" as "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *see also Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 579 (5th Cir.), *cert. denied sub nom. Clark v. Inco Champion Nat'l Sec., Inc.*, 141 S. Ct. 662 (2020). "A statement or document which shows 'on its face that an improper criterion served as a basis—not necessarily the sole basis, but a basis—for the adverse employment action [is] direct evidence of discrimination.'" *Herster v. Bd. of Supervisors of La. State Univ.*, 887 F.3d 177, 185 (5th Cir. 2018) (quoting *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005)).

Here, Plaintiff points to a January 16, 2018, letter from BNSF Senior Manager Chad Shramek to Plaintiff as direct evidence of disability discrimination. Resp. 2, ECF No. 34 (citing Pl.'s App., Ex. 3, ECF No. 34-3). The letter in totality reads

> As of January 16, 2018, you have not complied with the Medical Department[']s requests regarding your fitness for duty. Accordingly, you are being placed on a medical leave of absence until February 15, 2018. If at any time during this MLOA you comply with the requirements outlined in Medical Department[']s letters to you, your fitness for duty will be reviewed[,] and you could be returned to service. Otherwise, the Medical Department will determine you to be disqualified from performing safety-sensitive duties on February 16, 2018.
>
> For questions regarding your fitness to perform safety-sensitive duties and the requirements per the Medical Department, please refer to the letters you have received from the Medical Department. The contact should be either Carol Wilks at 817-352-1618 or Cindy OConnell at 817-352-1663.

Pl.'s App., Ex. 3, ECF No. 34-3.

First, the letter on its face provides that "not compl[ying] with the Medical Department[']s requests" was the basis of the decision to place Plaintiff on medical leave. *Id.* This sort of vague reference, without context, requires the Court to look outside the face of the letter to understand the basis for BNSF's action, a step that would relegate the letter to only circumstantial evidence. *See Herster*, 887 F.3d at 185 (direct evidence requires a "document which shows *on its face* that an improper criterion served as a basis . . . for the adverse employment action" (emphasis added) (internal quotation marks and citations omitted)).

Second, even accepting that the letter incorporates those contextual documents by reference, the letters alone still require the Court to draw an inference that BNSF's actions based on "not compl[ying] with the Medical Department[']s requests" to seek treatment outside the Restricted Medication List were actually on the basis of Plaintiff's underlying chronic pain, rather than the effects of a medication. The letter makes no mention of chronic pain—let alone any mention that chronic pain was the reason Plaintiff would be placed on medical leave. *See, e.g.*, *Nall v. BNSF Ry. Co.*, 917 F.3d 335, 341 (5th Cir. 2019) ("To be evidence of animus, the comment requires an inference that the irreversible nature of Parkinson's disease was the reason why [the plaintiff] would not be returning to work."). Placing Plaintiff on leave for lacking the fitness to serve as a train dispatcher based on taking an opioid within a timeframe before work is not equivalent to placing Plaintiff on leave for his chronic pain. *See, e.g.*, *Kitchen v. BASF*, 952 F.3d 247, 252 (5th Cir. 2020) ("Firing Kitchen for arriving to work under the influence of alcohol is not equivalent to firing Kitchen because of a prejudice against alcoholics. An inferential leap is required to arrive at the conclusion BASF discharged Kitchen out of discriminatory animus against him as an alcoholic."). Because the evidence would require the Court to draw an inference of discriminatory animus, the letter does not constitute direct evidence; it is circumstantial evidence

which the Court may consider only under the *McDonell Douglas* framework. Accordingly, the Court turns to that framework.

For a disability-discrimination claim based on circumstantial evidence, courts apply the *McDonnell Douglas* burden-shifting framework under which a plaintiff first makes a prima facie showing that "(1) the plaintiff has a disability, or was regarded as disabled; (2) he was qualified for the job; and (3) he was subject to an adverse employment decision on account of his disability." *Nall*, 917 F.3d at 340 (citing *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893 (5th Cir. 2002)); *Williams v. J..B. Hunt Transp., Inc.*, 826 F.3d 806, 811 (5th Cir. 2016). If the plaintiff makes the prima facie showing, the defendant must then articulate a "legitimate, non-discriminatory reason for the adverse employment action." *Id.* When the defendant presents those reasons, the burden shifts back to the plaintiff "to produce evidence from which a jury could conclude that [the defendant]'s articulated reason is pretextual." *Id.*

### A. Plaintiff's Prima Facie ADA Claim

The Court agrees with the parties that Plaintiff has a disability as defined by the statute—namely, chronic pain. *See* Mot. 19, ECF No. 31; Resp. 2, ECF No. 34. Even accepting that Plaintiff satisfied the first prong, he has failed to demonstrate that he is a "qualified individual" or that the employment decision was "on account of his disability[,]" so he has failed to show a prima facie case of disability discrimination sufficient to shift the burden to BNSF. *See* 42 U.S.C. § 12112(a).

#### 1. *Qualified Individual*

Plaintiff contends that he is a qualified individual under the ADA because he "has performed the essential functions of his job as a train dispatcher for over a decade without incident related to the use of his prescription pain medications." Resp. 4, ECF No. 34. BNSF's qualification argument is twofold: (1) "employees who used certain medications, including opioids, [are] no

longer [] qualified to work in roles involving safety-sensitive duties[,]" Mot. 19, ECF No. 31; and (2) "to be 'qualified,' an employee must be able to *safely* perform the duties of his or her employment." *Id.* at 20 (citing *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1094 (5th Cir. 1996); *Daugherty v. City of El Paso*, 56 F.3d 695, 698 (5th Cir. 1995); *Goode v. BNSF Ry.*, No. 4:18-cv-319-Y, 2020 WL 1527864, at *5 (N.D. Tex. March 20, 2020)). For the following reasons, the Court concludes that Plaintiff was a qualified individual under the ADA.

"To be a qualified employee, [a plaintiff] must be able to show that he could either (1) 'perform the essential functions of the job in spite of his disability,' or (2) that 'a reasonable accommodation of his disability would have enabled him to perform the essential functions of his job.'" *Cannon v. Jacobs Field Servs. N. Am., Inc.*, 813 F.3d 586, 592 (5th Cir. 2016) (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014)); *see* 42 U.S.C. § 12111(8). "A function is 'essential' if it bears 'more than a marginal relationship' to the employee's job." *Id.* (quoting *Chandler v. City of Dall.*, 2 F.3d 1385, 1393 (5th Cir. 1993), *holding modified on other grounds as discussed in Kapche v. City of San Antonio*, 304 F.3d 493 (5th Cir. 2002)). "[C]onsideration shall be given to the employer's judgment as to what functions of a job are essential. . .." 42 U.S.C. § 12111(8).

Here, BNSF's declaration of the Restricted Medications List as a qualification for some roles, alone, does not foreclose that Plaintiff is no longer a qualified to be a train dispatcher under the ADA.[1] Without an incident, Plaintiff worked as a train dispatcher from 1996 to 2003 without his disability; from 2003 to 2018, he worked as a train dispatcher in spite of his disability while taking opioids. *See* Def.'s App 4–14, 158–59, 320, 324–25, 420–21, 584, 603, ECF No. 32; *see*

---

[1] Alas, BNSF's "because we said so" argument carries little weight. *See* Mot. 19, ECF No. 31. That sort of ipso facto would usurp the entire ADA: surely, a blind individual would not be an "unqualified individual," tossed out of court, by mere virtue that an employer deems sight to be a qualification for a job, without more.

*also id.* 355 ("Correct. We didn't have active knowledge that an incident occurred due to his medication use."). Indeed, even once BNSF decided the Policy was absolutely necessary, BNSF allowed Plaintiff to stay in the role from the date of the Policy announcement on October 17, 2017, until January 16, 2018, demonstrating that even BNSF believed he was qualified to perform the functions of a train dispatcher. *See* Def. App. 53–57, 160, 391–96, 443–44, 454, ECF No. 32; *see also* Pl.'s App., Ex. 3, ECF No. 34-3. Viewing this evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that Plaintiff was a qualified individual under the ADA.[2]

2. *On Account of His Disability*

BNSF argues that Plaintiff cannot show that BNSF removed Plaintiff from his job as a train dispatcher because of his disability. Mot. 23–24, ECF No. 31. Plaintiff responds that "Defendant concedes for purposes of summary judgment that Mr. Armitage has a disability and an adverse employment action." Resp. 3, ECF No. 34 (BNSF "only challenges prong two that Mr. Armitage was qualified for the train dispatcher job."). To meet its prima facie burden, Plaintiff must present evidence that his "discharge was based on any discriminatory animus against him [for his disability]." *Kitchen*, 952 F.3d at 253; *see also Moore v. Centralized Mgmt. Servs., L.L.C.*, 843 F. App'x 575, 579 (5th Cir. 2021) (affirming summary judgment where the plaintiff "failed to present any evidence that [the defendant] terminated him *because* of his alcoholism."). Here, Plaintiff attempts to invert its *prima facia* burden, makes no attempt to cure the inversion in further briefing,

---

[2] To the extent BNSF asserts that Plaintiff cannot perform the job safely, it blurs the lines between the prima facie case of qualification and the affirmative defense of "direct threat" to safety. *See, e.g.*, *Nall*, 917 F.3d at 342 (a plaintiff's qualification may turn directly on the employer's "direct threat" defense). Though the Court is mindful that "BNSF is not required to wait for a mishap before it takes action to ensure the safety of [plaintiff], his fellow employees, and the public," *Goode v. BNSF Ry*, No. 4:18-cv-319-Y, 2020 WL 1527864 (N.D. Tex. March 20, 2020) (Means, J.), the Court declines to blur the direct-threat-to-safety defense within the *McDonnell Douglas* framework.

and, thus, fails to make a prima facie case that BNSF disqualified Plaintiff on account of his disability.[3]

Even had Plaintiff demonstrated a prima facie ADA claim, BNSF would still be entitled to summary judgement on its "legitimate, non-discriminatory reasons for the adverse employment action." *See Nall*, 917 F.3d at 340 (citing *Sandstad*, 309 F.3d 893). BNSF contends that it "acted only on the basis of safety concerns as expressed in BNSF's Restricted Medication list." Mot. 25, ECF No. 31 (citing Def.'s App. 376–77, 388–89, 396–99, 455–60, ECF No. 32). Though BNSF stated a legitimate, non-discriminatory reason for its action, Plaintiff fails to respond with any "evidence from which a jury could conclude that BNSF's articulated reason is pretextual."[4] *Cannon*, 813 F.3d at 590.

Because the parties only present circumstantial evidence of disability discrimination and because Plaintiff failed to demonstrate a prima facie case of disability discrimination and to rebut with evidence of pretext BNSF's legitimate, non-discriminatory reason for removing Plaintiff from

---

[3] Because Plaintiff failed to meet its prima facie burden, the Court need not address the unresolved legal question of whether medication consumption is per se discrete from unlawful discrimination based on a disability. *See* Mot. 24, n.13, ECF No. 31*; see, e.g.*, *EEOC v. Steel Painters LLC*, 433 F. Supp. 3d 989 (E.D. Tex. 2020) (finding that firing an employee for methadone use by an employee engaging in safety-sensitive work created a genuine dispute of material fact as to whether the firing was based on the medicine or based on the disability); *Cotto v. Ardagh Glass Packing, Inc.*, No. cv 18-1037 (RBK/AMD), 2018 WL 3814278, at *5, *8 (D.N.J. Aug. 10, 2018) (holding that an employer's refusal to waive a drug test for an employee using medical marijuana was based on conduct resulting from the treatment of a disability, not the disability itself); *Shepherd v. Kohl's Dep't Stores, Inc.*, No. 14-cv-0190, 2016 WL 4126705, at *6 (E.D. Cal. Aug. 2, 2016) (holding that there was a difference between firing an employee for anxiety and firing an employee for the means they chose to treat that anxiety: medical marijuana); *Garcia v. Tractor Supply Co.* 154 F. Supp. 3d 1225, 1229 (D.N.M. 2016) (holding that by terminating an employee treating HIV/AIDS with medical marijuana, the employer did not necessarily terminate the employee because of the underlying medical condition because marijuana use is not a manifestation of HIV/AIDS).

[4] Plaintiff's arguments that BNSF's doctor "could have conducted neuropsychological testing, field tests, or peer to peer consultations to determinate whether [Plaintiff] had an individualized response to his prescription" are misplaced and neither help to establish its prima facie case nor to show pretext. *See* Resp. 5–10, ECF No. 34.

his job as a train dispatcher, the Court concludes that, under the *McDonnel Douglas* framework, there is no genuine dispute of material fact as to Plaintiff's ADA claim against BNSF for implementing the Policy.[5] Accordingly, the Court will grant the motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant BNSF's Motion for Summary Judgment (ECF Nos. 30–32) as to Plaintiff Gary Armitage's ADA disability-discrimination claim, which is hereby **DISMISSED with prejudice**. Pursuant to Federal Rule of Civil Procedure 58(a), a final judgment shall issue separately.

**SO ORDERED** on this **6th day** of **July, 2021**.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**

---

[5] Because Plaintiff's claim fails on both grounds before reaching any affirmative defense, the Court need not address BNSF's overlapping business-necessity and direct-threat-to-safety defenses.